No. 01-126

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 284

RANDAL L. OLSON and PAMELA A.

OLSON, d/b/a BRIMSTONE CREEK RANCH,

Plaintiffs and Respondents,

v.

STEVE DAUGHENBAUGH,

Defendant and Appellant.

APPEAL FROM: District Court of the Nineteenth Judicial District,

In and for the County of Lincoln,

Honorable Michael C. Prezeau, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

William A. Douglas, Douglas Law Firm, P.C., Libby, Montana

For Respondents:

Robert T. Bell, Reep. Spoon & Gordon, P.C., Missoula, Montana

Submitted on Briefs: August 9, 2001
Decided: December 20, 2001

Filed:

_____

Clerk


Justice . William Leaphart delivered the Opinion of the Court.

¶1 Steve Daughenbaugh (Daughenbaugh) appeals from the Nineteenth Judicial District Court's award of summary judgment to Randal L. Olson and Pamela Olson (Olsons) in their declaratory judgment action. We affirm.

¶2 The following issue is presented on appeal:

¶3 Does § 39-71-515, MCA, permit an injured employee of an uninsured employer to collect from the employer the amount of compensation the employee would have received had the employer been properly insured if the employee has admittedly received all of the workers' compensation benefits to which he is entitled from the State of Montana Uninsured Employers' Fund?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 The parties agree that the material facts of this case are undisputed. The Olsons own Brimstone Creek Ranch (the Ranch) in north Lincoln County near Trego, Montana. Daughenbaugh began working at the Ranch as a ranch hand, and in April 1995 Daughenbaugh was thrown from a horse and injured while performing ranch duties. The Olsons did not carry workers' compensation insurance on Daughenbaugh. However, in October 1995 the parties negotiated a settlement agreement in which the Olsons agreed to pay Daughenbaugh's salary and medical expenses and to allow him to live on the ranch and continue his duties there for a specific period of time. In turn, Daughenbaugh signed a general release and indemnification agreement releasing all claims against the Olsons and agreeing to indemnify them against any claims arising from his injury.

¶5 Notwithstanding the general release and indemnity agreement, Daughenbaugh filed a claim for workers' compensation benefits with the Montana Department of Labor and Industry. Since the Olsons were uninsured, the Montana Uninsured Employers' Fund (UEF) processed the claim and paid wage loss and other benefits to Daughenbaugh.

¶6 On August 22, 1997, the Olsons filed a lawsuit seeking declaratory relief in the form of an order holding that the general release and indemnity agreement Daughenbaugh signed was valid and enforceable. Daughenbaugh responded that the agreement was unenforceable, and he filed a counterclaim alleging that, pursuant to the independent cause of action provided in § 39-71-515, MCA, he was entitled to recover directly from the Olsons damages in the amount of compensation that he would have received had the Olsons been properly enrolled in a workers' compensation insurance plan. Daughenbaugh also alleged negligence against the Olsons.

¶7 On May 20, 2000, Daughenbaugh filed a Petition/Order for Compromise and Release Settlement with the Workers' Compensation Court (Petition). In the Petition, Daughenbaugh agreed to accept the sum of $5,000 from the Olsons for attorney's fees and $38,820.88 from the UEF (inclusive of sums already paid by the UEF) and to fully release and discharge the Olsons and the UEF from all obligations for benefits under the Workers' Compensation Act. Daughenbaugh acknowledged that the $38,820.88 represented his full entitlement to workers' compensation benefits arising from the injury had the Olsons been properly enrolled in a compensation plan. The Olsons agreed to reimburse the UEF in the amount of $38,820.88 plus pay a $2400 penalty for their failure to enroll in a proper workers' compensation plan.

¶8 Finally, Daughenbaugh agreed to dismiss his pending negligence action against the Olsons. However, he reserved the portion of his counterclaim described above alleging that he was entitled to direct compensation from the Olsons under § 39-71-515, MCA. The parties agreed to resolve this issue in the district court. The District Court's decision granting the Olsons summary judgment on this issue is now before the Court.

## DISCUSSION

¶9 Does § 39-71-515, MCA, permit an injured employee of an uninsured employer to collect from the employer the amount of compensation the employee would have received had the employer been properly insured if the employee has admittedly received all of the workers' compensation benefits to which he is entitled from the State of Montana Uninsured Employers' Fund?

¶10 The District Court's conclusion that the doctrine of *res judicata* prevents an injured worker from being awarded duplicate compensation in competing forums is a conclusion of law. We review a district court's conclusion of law to determine if it is correct.

*Neustrom v. Dept. of Labor & Industry* (1997), 283 Mont. 179, 182, 939 P.2d 990, 992.

¶11 Daughenbaugh's claim rests upon § 39-71-515, MCA, which provides in pertinent part:

> (1) An injured employee or the employee's beneficiaries have an independent cause of action against an uninsured employer for failure to be enrolled in a compensation plan as required by this chapter.
>
> . . . .
>
> (4) The amount of recoverable damages in such an action is the amount of compensation that the employee would have received had the employer been properly enrolled under compensation plan No. 1, 2, or 3.
>
> (5) A plaintiff who prevails in an action brought under this section is entitled to recover reasonable costs and attorney fees incurred in the action, in addition to his damages.

¶12 The District Court held that under the doctrine of *res judicata* and our decision in *Neustrom*, 283 Mont. at 186, 939 P.2d at 994, Daughenbaugh was not entitled to receive the benefits he would have received from the Olsons in an independent action pursuant to § 39-71-515, MCA, since he had, admittedly, already received these benefits from the UEF. The court stated, "Daughenbaugh is not now entitled to go back to a different forum to recover the same benefits he already received when the Workers' Compensation Court approved his settlement with the UEF. . . . It is not the intent of the law to punish a noncomplying employer by requiring the employer to twice pay benefits and attorney fees for the same injury."

¶13 On appeal, Daughenbaugh argues that this is precisely the intent of the law. Pursuant to the plain language of § 39-71-515, MCA, and *Thayer v. Uninsured Employers' Fund*, 1999 MT 304, 297 Mont. 179, 991 P.2d 447, Daughenbaugh claims that he may pursue an independent action against the Olsons regardless of the fact that the UEF paid him his full entitlement to workers' compensation benefits. Daughenbaugh contends that there is nothing in a fair reading of § 39-71-515, MCA, which bars pursuit of an independent cause of action if the injured employee has already received benefits from the UEF. Furthermore, Daughenbaugh insists that the action provided for in § 39-71-515, MCA, is a

"powerful and new" cause of action independent of any other statutory scheme under the Workers' Compensation Act.

¶14 The Olsons, on the other hand, contend that the District Court's conclusion of law on this issue is correct. They maintain that Daughenbaugh already received his full entitlement to workers' compensation benefits from the UEF, and that the Olsons agreed to repay the UEF for these sums, pay a penalty fee, and pay $5000 for Daughenbaugh's attorney's fees. The Olsons assert that they have "paid their penance." In addition, they dispute Daughenbaugh's claim that § 39-71-515, MCA, is independent from other workers' compensation statutes, and the Olsons argue that according to the legislative history of § 39-71-515, MCA, and our decisions in *Thayer* and *Neustrom*, Daughenbaugh is not entitled to "double dip" workers' compensation benefits.

¶15 We agree. Daughenbaugh seeks full compensation for his work-related injury twice- once from the UEF and again from the Olsons. We hold that § 39-71-515, MCA, does not allow for a double recovery of workers' compensation benefits.

¶16 At the outset, we address Daughenbaugh's contention that § 39-71-515, MCA, is a "powerful and new" cause of action independent of any other statutory scheme. This is simply not the case. Rather, § 39-71-515, MCA, is part of the Workers' Compensation Act under § 39-71-101, MCA. It represents one component of a comprehensive workers' compensation scheme which provides a *quid pro quo* for employers who enroll in a workers' compensation plan and imposes significant and specific penalties upon employers who do not. *See Buerkley v. Aspen Meadows Ltd. Partnership*, 1999 MT 97, ¶ 16, 294 Mont. 263, ¶ 16, 980 P.2d 1046, ¶ 16; §§ 39-71-504, -507 and -509, MCA (providing penalties for uninsured employers). Where there are several statutory provisions or particulars, the Court construes them, if possible, to give effect to all. Section 1-2-101, MCA. Accordingly, we construe § 39-71-515, MCA, in conjunction with other relevant workers' compensation provisions.

¶17 Having said that, Montana employees, under the Workers' Compensation Act, have several options for recovery when they are injured at work and their employer is uninsured. Section 39-71-508, MCA, coordinates these remedies. It states that an injured worker may pursue all remedies concurrently, including but not limited to: (1) a claim for benefits from the uninsured employers' fund; (2) a damage action against the employer in accordance with § 39-71-509, MCA; (3) an independent action against an employer as provided in § 39-71-515, MCA; or (4) any other civil remedy provided by law. Section 39-

71-508, MCA. The plain language of this section indicates an injured employee may pursue these remedies concurrently-not duplicatively, as Daughenbaugh suggests. Indeed, Daughenbaugh's rationale would lead to the absurd result that an injured employee could be compensated four or more times for his injury. This Court has previously held that when construing statutes, the interpretation should be reasonable to avoid absurd results. *Doting v. Trunk* (1993), 259 Mont. 343, 351, 856 P.2d 536, 541.

¶18 Furthermore, despite Daughenbaugh's assertions to the contrary, there is no indication that the legislature intended to provide for a "double recovery" when permitting an injured employee to concurrently seek benefits from the UEF and the uninsured employer. On February 11, 1985, the House Judiciary Committee held a hearing on House Bill No. 529 regarding proposed statutory amendments drafted to address the compensation problem that injured employees of uninsured employers faced due to the UEF's insolvency. A proponent of House Bill No. 529 stated that the intent behind permitting concurrent actions in § 39-71-508, MCA, was to "take away incentive from employers not to cover and provide an injured person three ways to try to get compensated for their injuries with the understanding that he is only going to be compensated one time." *See* testimony of Karl Englund, minutes of hearing on HB 529, House Judiciary Committee, February 11, 1985, p. 5 (emphasis added).

¶19 Our previous decisions mirror this rationale. In *Thayer v. Uninsured Employers' Fund*, a workers' compensation claimant received a $100,000 settlement from her husband's uninsured employer. *Thayer*, ¶ 9. Subsequently, the UEF discontinued payment of her death benefits under § 39-71-511, MCA, a setoff provision requiring a claimant to discharge her remaining claims against the UEF if she receives such a settlement. *Thayer*, ¶ 10. We held that the claimant was not entitled to recover from both the UEF and the uninsured employer because the Uninsured Employers' Fund is merely a safety net which stands in the place of the uninsured employer, and the setoff provisions are uniquely necessary to assure some payment to as many uninsured employees as possible. *Thayer,* ¶¶ 22, 24. Consequently, a double recovery was not permitted.

¶20 Daughenbaugh, however, encourages the Court to focus its attention on the timing of events in *Thayer* rather than the general proposition that a double recovery is forbidden. He claims that here, unlike in *Thayer*, the UEF paid all the benefits to which he was entitled before he sought a settlement from the Olsons, and, as such, a double recovery in this case is just. However, our decision in *Neustrom*, which Daughenbaugh fails to address, explains that regardless of the timing of events, a double recovery is not

permitted.

¶21 In *Neustrom*, an injured employee filed a claim for workers' compensation benefits alleging that he was Neustrom's employee at the time he was injured. *Neustrom*, 283 Mont. at 181, 939 P.2d at 991. He also filed a § 39-71-515, MCA, independent action against Neustrom. *Neustrom*, 283 Mont. at 181, 939 P.2d at 991. Following the UEF's determination that the alleged employee was in fact Neustrom's employee, Neustrom petitioned the District Court to vacate this finding. *Neustrom*, 283 Mont. at 181-82, 939 P.2d at 991-92. We held that the District Court lacked jurisdiction to vacate the decision of the UEF. We concluded that, under Montana's Workers' Compensation Act, the employee's independent action and claim for unemployment benefits proceeded along two separate and exclusive tracks: the independent action in the district court and the unemployment benefits action in the Workers' Compensation Court. *Neustrom*, 283 Mont. at 186, 939 P.2d at 994. Furthermore, we stated:

> The Act's plain requirement that the Workers' Compensation Court decide issues related to UEF claims and the district court decide issues related to the "independent action" will not, as is impliedly argued in the briefs, create potentially inconsistent results. The claimant must initiate both claims and is bound by principles of res judicata or collateral estoppel by the decision of the first venue to arrive at a decision. The claimant must take that reality into consideration when making a decision about which claim to file, or the timing of each claim.

*Neustrom, 283 Mont. at 186, 939 P.2d at 994.*

¶22 The doctrine of *res judicata* is grounded on the principle that litigation must at some point come to an end. It bars the relitigation of an entire cause of action once a final judgment has been entered. *Res judicata* applies if: (1) the parties or their privies are the same; (2) the subject matter of the action is the same; (3) the issues are the same and relate to the same subject matter; and (4) the capacities of the persons are the same in reference to the subject matter and to the issues. *Holtman v. 4-G's Plumbing & Heating, Inc.* (1994), 264 Mont. 432, 436, 872 P.2d 318, 320.

¶23 Here, under §§ 39-71-508 and -515, MCA, *Neustrom* and the doctrine of *res judicata*, Daughenbaugh could pursue a claim for benefits from the UEF and an independent action against the Olsons at the same time. However, Daughenbaugh was bound by the decision of the first venue to arrive at a decision-here, the UEF's decision to pay Daughenbaugh the

full the amount of compensation that he would have received had the Olsons been properly insured.

¶24 Accordingly, we hold that the District Court correctly concluded that § 39-71-515, MCA, does not permit an injured employee of an uninsured employer to collect from the employer the amount of compensation the employee would have received had the employer been properly insured if the employee has admittedly received all of the workers' compensation benefits to which he is entitled from the State of Montana Uninsured Employers' Fund. We affirm the District Court's grant of summary judgment to the Olsons.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER

/S/ JIM RICE